JOHN FORD *v.* AUGUSTUS SKINNER AND OTHERS.

A judgment lien upon land is not discharged, against a subsequent purchaser, by the fact that chattels were once levied upon, and the levy released, by the mutual consent of the parties to the execution.

THIS was a bill of injunction, to restrain the defendants from selling certain real estate, taken in execution upon a judgment at law; and was reserved from the county of Geauga.

The case was as follows: On June 8, 1813, one Jacob French mortgaged the lands in controversy to Daniel L. Coit, for the sum

of five hundred dollars.  On November 16, 1818, French conveyed,. in fee, the same premises to John Ford, the complainant, who afterward, on May 17, 1819, purchased and took an assignment of the mortgage from Coit.   At the October term of the court of common pleas, in the year 1816, the then commissioners of the county of Geauga, and whose successors were made defendants in this bill, recovered a judgment against French and others, for the use of Abraham Skinner, the intestate of the defendant, Augustus Skinner, for the sum of four thousand dollars, to be discharged on the payment of one thousand eight hundred and eighty-four dollars and costs.   Upon this judgment, executions issued from time to time, and small sums of money collected, until October 28, 1818, when the sheriff levied upon  personal property of French, 379]   *sufficient to discharge the judgment, but the same was returned by the sheriff, unsold for want of time to advertise.   On December 26, 1818, a *vendi.* was issued, and on the 3d of March following, by consent of parties to the execution, the personal prop· erty thus levied upon was released, and redelivered to French. Executions were again issued, from time to time, and a considerable portion of the money made.   On February 19, 1828, a *pl. fi. fa.* was issued, and the sheriff having indorsed *nulla bona,* levied upon a part of the real estate purchased by the complainant of Ford, as before stated, and thereupon this bill was filed to enjoin all further proceedings upon the execution.   There was no charge that the levy upon the personal property was discharged fraudulently, or with intent to injure the complainant; but the bill contained the common charge, that the defendants combining, etc., to injure and oppress the complainant, refuse to release their lien on the land, etc.

WEBB, for complainant:

It will be seen that the principle which ought to govern in this case, is almost, or quite, the same as that of marshaling assets, or that principle, that where one creditor has two funds, out of which he may be paid, and another has but one, the creditor having the two funds shall first exhaust that of which he alone can have the control, before he shall be permitted to resort to the other.   This principle is so familiar with the court, that it is deemed entirely unnecessary to cite any authorities in support of it.

I shall proceed to recite some of the leading facts in the case.   It

Ford v. Skinner.

seems that a judgment was obtained by the former commissioners of the county of Geauga, for the use of the testator of one of the respondents, against Jacob French and Benj. Bates, Jr., which was a lien on certain lands deeded by French to the complainant, on November 14, 1818. That on the 4th day of that month, previous to the purchase of the farm by Ford, the sheriff of Geauga county returned that he had levied on a large amount of property belonging to French, by virtue of an execution founded on this judgment, which property, at a fair valuation, would \*have [380 paid the judgment, or nearly so. That, in any event, there was enough, or more than enough, with a small sum of money, which had already been paid, and what was afterward collected from Bates, to have paid the judgment. That on the 16th day of November aforesaid, Ford paid French four thousand five hundred dollars for this farm. In March, 1819, the sheriff, by the direction of Skinner, releases to French this large amount of property, who received it and disposed of it as he thought was most for his interest; and after some attempt to collect this judgment from Bates at this late period, after a lapse of ten years or more, a levy is attempted to be made upon this farm. It is evident, from the testimony of King, the sheriff who made the levy, and of Seely and Graham, that the property was, at a low valuation, worth more than the debt. These men were then, and now are, all men of business, perfectly conversant with the value of property. Graham gives a particular reason why his recollection as to the value of property, at that time, is so good. It was because he came to this state that year, and had occasion to purchase articles of a similar kind for cash. Ford, it will be noted, bought this farm twelve days after he knew this large amount of property was seized; and he had no conception that it would be released; for if he had so supposed, and that it would have been effectually released, so as to have had effect upon third persons, he would never have taken a deed of the farm. Although I have said I would not cite any authorities, I shall refer the court to the following cases in support of our case. 1 Mad. 202, 493; Hawley v. Maners, 1 Johns. Ch. 174, 184; 19 Johns. 406; 4 Johns. Ch. 17, 20. These and other cases might be cited. They are not the same as our case, as we are purchasers at private sale, but in equity and good conscience, we are the same as if we were strictly creditors, and the cases are analogous.

It may be further remarked, that this levy, so long as it remained, was a satisfaction of the debt to the creditor, and would have continued so to be, if it had not have been released by the creditor, with the consent of the judgment debtor. 3 Ohio, 223. And is 381] so yet, as I believe, so *far as respects my client, and all other third persons, and ever will be.

MATTOON & CARD, contra:

The doctrine of the counsel for complainant, with regard to marshaling assets, or that principle where one creditor has two funds out of which he may be paid, and another has but one, the creditor who has two funds shall first exhaust that which he alone can control, before he shall be permitted to resort to the other, is not admitted by respondent as being analogous to the circumstances of this case. Every case must be decided upon the peculiar circumstances attending it. It will be perceived by the court, that Bates and French are the joint judgment debtors, both jointly and severally liable, and their effects. The judgment was rendered November 5, 1816, and by the operation of the statute, the lands of both were incumbered by the judgment. Ford is a purchaser, and does not stand in the same relation as a judgment creditor. The statute of 1824, section 17, page 114, is broad. It provides that the execution must be levied before the expiration of one year, next after the rendition of judgment, or the judgment shall not operate as a lien on the estate of any debtor, to the prejudice of any other bona fide judgment creditor. This statute places a judgment creditor, in advance of a bona fide purchaser. There is no provision in this statute, by which any bona fide purchaser can divest the judgment creditors of the lien upon the real estate of the judgment creditor, although no execution be taken out. This shows that the application made of the authorities of the counsel for complainant bear no affinity to this case. The cases cited by Mr. Webb, from 19 Johns. 486, and others, seem not to warrant him in his conclusions. It is admitted that it appears by the sheriff's return, that he levied on a quantity of wheat, hay, oats, flax, and fifty sheep. It also appears by the return of the sheriff, that it was supposed that the wheat, hay, oats, flax, and sheep amounted to the quantity stated by the complainant's counsel. There is nothing definite or certain as to the amount. This property, deducting a reasonable compensation for preparing it for

Ford *v.* Skinner.

market, *and disposing of it, would not be equal to the [382 amount of the judgment. No one can believe that this property, if it had been sold under the levy, in the fall of 1818, or the spring of 1819, could have been sold for more than one half or two-thirds of its real value. There is no direct evidence to satisfy the court, that the complainant had any knowledge of the levy, at the time he took the deed. As to the amount collected from Bates, subsequent to the purchase of the land by Ford of French, it has nothing to do with the point under consideration. For if there was not sufficient property levied upon, at the time of the conveyance, the judgment can not be considered as satisfied, even upon the principles contended for by the complainant's counsel. It is believed that the principle is well settled, that where one judgment creditor has a lien on two funds, out of which he can satisfy his debt, and a subsequent creditor has a lien upon one of the funds only, the second creditor must make it appear clearly that the fund which he can not touch, is unincumbered, and sufficient to discharge the claim. In the absence of this evidence, we trust the court will not say the judgment has been satisfied from the evidence of the levy. It is not denied that a levy on personal property, sufficient to discharge the judgment, is a satisfaction, while the levy is in force, so far as it regards the judgment creditor and debtor; but it is contended that this principle does not extend to purchasers. The case cited from the Ohio Reports is one where the suit was commenced on a bond to perfect an appeal; and the levy, at the time when the suit was depending, was admitted to be in force and undisposed of; and therefore clearly distinguishable from the present suit. By the bill of complaint, it appears that Ford, if he had any relief, has a plain and adequate remedy at law. The mortgage deed from French to Coit does not interfere with the claim of the defendant. A mortgage interest, before foreclosure, is a chattel interest, and the mortgagee can not sell without a bill of foreclosure and decree of sale. 3 Johns. Ch. 129; 2 Johns. Ch. 62; Stat., p. 86, sec. 57; also, p. 231, sec. 1. The mortgage has never been foreclosed, and there is land sufficient to discharge both claims. 4 Johns. Ch. 534.

The solicitor for the complainant has observed that there was *an attempt made to levy upon the land, by virtue of an ex- [383 ecution in favor of defendant. It is claimed by the respondent, from the state of the pleadings, that the complainant can not prop-

·erly make this a point in the case. For, by the bill, he has ad-mitted the right of Skinner, as executor, to control the judgment, and has stated that the levy was made, without complaining of any irregularity in that levy.

By the COURT:

The judgment in favor of Skinner was a lien upon the real estate of French, subject, however, to the prior incumbrance of Coit's mortgage. Ford having purchased subsequent to the rendition of the judgment, took the estate, subject to the lien of the judgment, unless it was satisfied in contemplation of law, by the prior levy upon the personal estate of French.

It has been determined by this court, that a levy upon goods and chattels is a satisfaction of the judgment, while the levy is in force and undisposed of. Cass *v.* Lyttleton et al., 3 Ohio, 223. This principle must be understood to operate, not as an actual discharge, but as a suspension of the right to enforce the judgment until the levy shall be disposed of.

In the present case, the levy upon the personal estate was set aside by mutual consent, and the property redelivered to the judg-ment creditor. This mutual arrangement can not affect the lien upon the real estate, at all events, as between the parties to the judgment. The parties stood in the same situation as if the levy never had been made; and the judgment creditor was at liberty again to execute the personal property, if it could be found, and if not, to prosecute his lien upon the real estate.

It necessarily follows from these principles, that the lands are liable to execution in the hands of Ford. Had the levy been dis-charged for fraudulent purposes, or with a design to injure Ford, the case would present an entirely different aspect. But no cir-cumstance is disclosed from which a presumption of fraud can be raised; and the complainant, in his bill, rests his claims not upon 384] any fraud practiced in the *transaction, but upon the sup-posed satisfaction of the judgment. We discover nothing in the case to exempt him from the operation of the general rule, appli-cable to all subsequent purchasers, with notice of a prior incum-brance.

Bill dismissed.

Judge BRUSH dissented.